# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                               :

MICHAEL PALMER,                :             Civil No. 09-2079 (PGS)

                                  :

                Petitioner,       :

                                  :                      **OPINION**

           v.                        :

                                  :

MICHELLE RICCI, et al.,        :

                                  :

                Respondents.     :
_____:

**APPEARANCES:**

        MICHAEL PALMER, #239004C
        New Jersey State Prison
        P.O. Box 861
        Trenton, New Jersey  08625
        Petitioner Pro Se

**SHERIDAN**, District Judge

      Michael Palmer filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a conviction entered in the Superior Court of New Jersey, Essex County, on March 15, 2002, based on his plea of guilty to third-degree possession of a controlled dangerous substance and third-degree unlawful possession of a weapon.  On May 11, 2009, this Court ordered Petitioner to show why the Petition should not be dismissed as untimely.  Petitioner thereafter filed a timely response to the Order to Show Cause, together with several exhibits.  For the reasons expressed below, this Court will dismiss the Petition as time barred and deny a certificate of appealability.

# I.  BACKGROUND

The Petition challenges a judgment of conviction entered in the Superior Court of New Jersey, Law Division, Essex County, on March 15, 2002, based on Petitioner's plea of guilty to third-degree possession of a controlled dangerous substance and third-degree unlawful possession of a weapon.  Although Petitioner asked his trial attorney to file a notice of appeal, no direct appeal was filed.  [Docket entry #3, p. 1].

On February 6, 2005, an article in the Newark Star Ledger indicated that the police officer who arrested Petitioner on July 29, 2001, Officer Lawrence Furlow, was indicted in Essex County on charges that he stole money, drugs and guns from drug dealers, planted evidence on innocent people and filed false arrest reports to cover their tracks.  Petitioner asserts that, because his own criminal charges resulted from the planting of evidence on Petitioner by Officer Furlow, on December 19, 2005, Petitioner filed a motion to withdraw his guilty plea in the Law Division of the Superior Court of New Jersey, followed on February 16, 2006, by a petition for post-conviction relief. [Docket entry #3.]   Petitioner argued that the withdrawal of the guilty plea was warranted by due process based on newly discovered evidence, and that Petitioner was denied the effective assistance of counsel.  Superior Court Judge Lombardi denied post conviction relief, and Petitioner appealed.  On June 5, 2008, the Appellate Division affirmed the denial of post-conviction relief, for the reasons expressed by Judge Lombardi in his oral opinion.  See State v. Palmer, 2008 WL 2277119 (N.J. Super., App. Div., June 5, 2008).  On September 24, 2008, the New Jersey Supreme Court denied certification.  See State v. Palmer, 196 N.J. 466 (2008) (table).

On April 23, 2009, 211 days after the New Jersey Supreme Court denied certification, Petitioner executed the § 2254 Petition presently before this Court.  The Petition raises two grounds:

> Ground One: PETITIONER SHOULD HAVE BEEN PERMITTED TO WITHDRAW HIS GUILTY PLEA TO CORRECT A MANIFEST INJUSTICE IN LIGHT OF NEWLY DISCOVERED EVIDENCE THAT SUBSTANTIATES PETITIONER'S CLAIM OF INNOCENCE.
>
> Ground Two: PETITIONER'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED AS A RESULT OF COUNSEL'S FAILURE TO FILE A CLEARLY MERITORIOUS MOTION TO SUPPRESS EVIDENCE SEIZED DURING AN ILLEGAL INVESTIGATORY STOP.

(Pet. ¶¶ 12.A. and 12.B.)

Based on the face of the Petition and the relevant decisions of the New Jersey courts which are available online, by Order entered May 13, 2009, this Court reasoned that the Petition appeared to be untimely, pursuant to 28 U.S.C. § 2244(d)(1)(A), because it was not filed within one year of May 1, 2002, the day after Petitioner's conviction became final upon expiration of the time to file a direct appeal from the judgment of conviction, which was filed March 15, 2002. This Court directed Petitioner to show cause in writing why the Petition should not be dismissed as untimely, to specify the date on which he filed a petition for post-conviction relief in the Law Division, and to attach a copy of said petition, if available.

On May 22, 2009, Petitioner filed a two-page Response.  Petitioner states that on December 19, 2005, he filed a motion to withdraw his plea and on February 16, 2006, he filed his petition for post-conviction relief.  Petitioner also filed several exhibits: (1) Petitioner's Brief in

3

Support of Petition for Post-Conviction Relief, filed in the Law Division on January 8, 2007; (2)

a transcript of entry of a guilty plea by police officer Tyrone Dudley dated September 23, 2004;

(3) Arrest Report signed by Officer Furlow regarding Petitioner's arrest on July 29, 2001; (4)

Star Ledger article dated February 6, 2005, regarding the indictment of Officer Furlow and other

officers and the guilty plea of Officer Dudley; (5) letter from Superior Court of New Jersey, Law

Division, dated January 9, 2006, reflecting that on December 19, 2005, Petitioner filed a motion

for withdrawal of guilty plea; (6) Law Division order dated May 1, 2006, assigning counsel for

Petitioner in his petition for post-conviction relief; (7) letter dated February 1, 2006, to Petitioner

from Superior Court Judge Michael L. Ravin reflecting receipt of Petitioner's letter dated

December 11, 2005, seeking to retract guilty plea; (8) pro se petition for post-conviction relief,

dated February 17, 2006, and date-stamped as filed on April 3, 2006; (9) letters from the Public

Defender's Office dated May 18, 2006, and March 22, 2007, regarding assignment of counsel for

Petitioner; and (10) letter dated April 3, 2008, to Petitioner from attorney Andrew P. Slowinski

regarding potential availability of relief pursuant to 28 U.S.C. § 2254.  Petitioner argues that

equitable tolling of the Petition is warranted for several reasons.

## II.  DISCUSSION

Petitioner argues: (1) the Petition is not untimely, as he did not discover Officer Furlow's

indictment until February 6, 2005, when the Star Ledger published the article; (2) extraordinary

circumstances prevented Petitioner from asserting his claims and he exercised due diligence; and

(3) the interest of justice would be better served by consideration of the merits of the Petition.

4

A.  Effect of Newly Discovered Evidence on Statute of Limitations

       Under 28 U.S.C. § 2244(d)(1), the limitations period begins to run on the latest of several dates, including "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," 28 U.S.C. § 2244(d)(1)(D), and "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 38 U.S.C. § 2244(d)(1)(A).  Petitioner essentially argues that the discovery of Furlow's indictment constitutes the "factual predicate" for his habeas claims and that he did not discover, and through the exercise of due diligence could not have discovered, that Furlow had been engaging in the practice of falsely planting evidence on suspects prior to publication of the article by the Star Ledger on February 6, 2005.  See Wilson v. Beard, 426 F. 3d 653, 660 (3d Cir. 2005) ("to satisfy § 2244(d)(1)(D)'s due diligence standard, a petitioner must exercise reasonable diligence in the circumstances") (citation and internal quotation marks omitted).

       Assuming for the purposes of argument, without deciding, that the one-year limitations period did not begin to run until February 6, 2005, see Wilson, 426 F. 3d at 661, the Petition is nevertheless untimely.  Under these circumstances, the statute of limitations began to run on February 6, 2005.  The limitations period ran for 316 days until December 19, 2005, the date on which Petitioner filed a motion to withdraw his guilty plea in the Law Division.  Although it is not clear whether the Law Division denied this motion before Petitioner filed his pro se petition for post-conviction relief on February 16, 2006 [docket entry #3, p. 1], this Court will presume for the purposes of this calculation that the statute of limitations was statutorily tolled from December 19, 2005, until the New Jersey Supreme Court denied certification on September 24,

2008, <u>see</u> <u>State v. Palmer</u>, 196 N.J. 466 (2008) (table).  The limitations period picked up on September 25, 2008, and ran for the remaining 49 days until it expired on November 13, 2008. Because Petitioner did not execute the § 2254 Petition in this case until April 23, 2009, which 161 days after the limitations period expired, the Petition is untimely by 161 days.

## B.  Extraordinary Circumstances and Due Diligence

The AEDPA statute of limitations is subject to equitable tolling.  <u>See</u> <u>Miller</u>, 145 F.3d at 618.  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005).  The Third Circuit instructs that equitable tolling is appropriate when "the principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition *and* the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims." <u>LaCava v. Kyler</u>, 398 F.3d 271, 275-276 (3d Cir. 2005).

Extraordinary circumstances have been found where (1) the defendant has actively misled the plaintiff, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum, <u>see</u> <u>Jones</u>, 195 F.3d at 159, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim, <u>see</u> <u>Brinson v. Vaughn</u>, 398 F.3d 225, 230 (3d Cir. 2005).[1]  Even where

_____

[1] For example, in <u>Urcinoli v. Cathel</u>, 546 F. 3d 269 (3d Cir. 2008), the United States Court of Appeals for the Third Circuit determined that equitable tolling was warranted where the District Court's <u>sua</u> <u>sponte</u> dismissal of the first § 2254 petition as mixed (which dismissal occurred after the one year limitations period had already expired), prevented the petitioner in an
(continued...)

6

extraordinary circumstances exist, however, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).

Petitioner argues that equitable tolling is warranted based on the following: (1) his attorney did not file a direct appeal, contrary to Petitioner's request; (2) ineffective assistance of counsel is properly raised in the New Jersey courts on post-conviction relief; (3) Petitioner's post-conviction relief petition was timely filed and he understood that the limitations period for a § 2254 petition did not begin to run until the New Jersey Supreme Court denied certification on post-conviction relief; (4) Petitioner is not knowledgeable in the law; and (5) allowing Petitioner to raise his federal issues under § 2254 is in the interest of justice. [Docket entry #3.]  The first and second arguments above are not relevant to equitable tolling since this Court is considering the limitations period to begin on February 6, 2005, when Petitioner discovered the factual predicate of his claim under § 2254(d)(1)(D).

In his third argument, Petitioner effectively contends that his inaccurate belief that the one-year limitations period did not begin to run until the New Jersey Supreme Court denied

---

[1](...continued)
extraordinary way from pursuing his exhausted claims, since the petitioner was not given the option of proceeding only on the exhausted claims.  Similarly, in Taylor v. Horn, 504 F. 3d 416, 426-27 (3d Cir. 2007), the Third Circuit affirmed the District Court's ruling that, where the District Court declined to stay a mixed § 2254 petition but noted that Taylor's filing of an exhausted petition would relate back under Federal Rule of Civil Procedure 15(c), equitable tolling was warranted.

certification on post conviction relief is an extraordinary circumstance warranting equitable

tolling.  He reasons that, because his petition for post conviction relief was "properly filed"

within the five-year period authorized by New Jersey Court Rule 3:22-12, the limitations period

under 28 U.S.C. § 2244(d)(1)(A) did not begin to run until post-conviction review was final.  To

be sure, such a reading of § 2244(d)(1)(A) would permit New Jersey prisoners to utilize all five

years allotted to them by New Jersey law, without federal interference, while preserving every

day of the one-year federal statute of limitations.  The problem with this argument is that it is

contrary to the plain language of § 2244(d)(1) and (d)(2).  See, e.g., Day v. McDonough, 126 S.

Ct. 1675 (2006); Long, 393 F.3d at 394-95.  As previously stated, the one-year limitations period

runs from the **latest** of the following events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence . . . .

28 U.S.C. § 2244(d)(1).

The above statute sets four triggering events, but it does not include as a triggering event

the date Petitioner seeks, i.e., the date on which a petition for post-conviction relief became final,

which in this case was September 24, 2008.  As triggering events (B) and (C) are not applicable

to Petitioner's case, the statute of limitations necessarily began to run from the latest of either the

date on which the judgment of conviction became final by the conclusion of direct review or the

expiration of the time for seeking such review, see 28 U.S.C. § 2244(d)(1)(A), or the date on

which the factual predicate of the claim or claims presented could have been discovered through

the exercise of due diligence, see 28 U.S.C. § 2244(d)(1)(D).  If § 2244(d)(1)(A) were to provide

the triggering event, then the limitations period would begin on May 1, 2002, 45 days after entry

of the judgment of conviction on March 15, 2002, as that is when the time to file a direct appeal

expired.  If § 2244(d)(1)(D) applies, then the statute of limitations began to run on February 6,

2005 (publication of the Star Ledger article), which is the date on which the factual predicate of

the could have been discovered through the exercise of due diligence.  Since February 6, 2005, is

later than May 1, 2002, then under the plain reading of § 2244(d)(1), the latest date for

Petitioner's statute of limitations to run is February 6, 2005.  Petitioner's argument essentially

boils down to a contention that Petitioner's mistaken belief that the limitations period did not

begin until the conclusion of post-conviction relief is an extraordinary circumstance warranting

equitable tolling.  However, neither his ignorance of the AEDPA nor Petitioner's mistaken belief

that regarding the triggering date for the statute of limitations is an extraordinary circumstance

warranting equitable tolling of the statute of limitations.  See Johnson v. Hendricks, 314 F.3d

159, 162-63 (3d Cir. 2002) (attorney's mistake in determining the date a § 2254 petition is due is

not an extraordinary circumstance for purposes of equitable tolling); Fahy v. Horn, 240 F.3d 239,

244 (2001) ("In non-capital cases, attorney error, miscalculation, inadequate research, or other

mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable

tolling").  Based on the foregoing, neither Petitioner's lack of legal knowledge (fourth argument) nor his mistaken belief as to when the limitations period began (third argument) is an extraordinary circumstance for the purpose of equitable tolling.

Petitioner's final argument is that it is in the interest of justice to reach the merits of his Petition.  The Petition raises two federal grounds: (1) Petitioner should have been permitted to withdraw his guilty plea to correct a manifest injustice in light of the newly discovered evidence, i.e., Officer Furlow's indictment and practice of planting evidence, which Petitioner asserts occurred in his case; and (2) counsel provided ineffective assistance in failing to file a motion to suppress the drugs and gun on the ground that Officer Furlow lacked reasonable suspicion under the Fourth Amendment to stop Petitioner.  Ground Two is barred by Petitioner's guilty plea.

As to Ground One, "[a] guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry . . . .   A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement . . . might be factually supported."  Tollett v. Henderson, 411 U.S. 258, 268 (1973).  In Brady v. United States, 397 U.S. 742 (1970), the Supreme Court ruled that a plea of guilty, which Brady would not have agreed to except for his desire to avoid a potential death sentence and to limit the maximum penalty to life imprisonment, was not thereby compelled within the meaning of the Fifth Amendment.  As the Court explained,

10

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, cf. Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered.

Brady, 97 U.S. at 756-757.

That same year, the Supreme Court decided McMann v. Richardson, 397 U.S. 759, 770 (1970), and North Carolina v. Alford, 400 U.S. 25, 31 (1970).  In McMann, the Court held that "a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack."  The Court explained its reasoning:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of unavoidable uncertainty, the defendant and

11

> his counsel must make their best judgment as to the weight of the
> State's case.  Counsel must predict how the facts, as he
> understands them, would be viewed by a court.  If proved, would
> those facts convince a judge or jury of the defendant's guilt . . . ?
> Questions like these cannot be answered with certitude; yet a
> decision to plead guilty must necessarily rest upon counsel's
> answers, uncertain as they may be.  Waiving trial entails the
> inherent risk that the good-faith evaluations of a reasonably
> competent attorney will turn out to be mistaken either as to the
> facts or as to what a court's judgment might be on given facts.

McMann, 397 U.S. at 769-770.

North Carolina v. Alford, 400 U.S. 25, 31 (1970), was a § 2254 case.  Alford, who was

indicted in North Carolina for first degree murder, punishable by death, pleaded guilty to second-

degree murder on the advice of counsel.  During the plea colloquy, Alford stated that he had not

committed the murder but he was pleading guilty to avoid a possible death sentence and to limit

the penalty to the 30-year maximum provided for second degree murder.  Id. at p. 31.  The

Supreme Court held that the state court did not commit constitutional error in accepting Alford's

guilty plea.  Id. at pp. 37-39.  "The standard was and remains whether the plea represents a

voluntary and intelligent choice among the alternative courses of action open to the defendant."

Id. at 31.  The Court noted that state and lower federal courts had been divided upon whether a

guilty plea can be accepted when it is accompanied by protestations of innocence and hence

contains only a waiver of trial but not admission of guilt.  Id. at 33.  The Court reasoned:

> "[W]hile most pleas of guilty consist of both a waiver of trial and
> an express admission of guilt, the latter element is not a
> constitutional requisite to the imposition of criminal penalty.  An
> individual accused of crime may voluntarily, knowingly, and
> understandingly consent to the imposition of a prison sentence
> even if he is unwilling or unable to admit his participation in the
> acts constituting the crime.

12

> Nor can we perceive any material difference between a plea that
> refuses to admit commission of the criminal act and a plea
> containing protestation of innocence when, as in the instant case, a
> defendant intelligently concludes that his interests require entry of
> a guilty plea and the record before the judge contains strong
> evidence of actual guilt.  Here the State had a strong case of first-
> degree murder against Alford.  Whether he realized or disbelieved
> his guilt, he insisted on his plea because in his view he had
> absolutely nothing to gain by a trial and much to gain by pleading.
> Because of the overwhelming evidence against him, a trial was
> precisely what neither Alford nor his attorney desired.  Confronted
> with the choice between a trial for first-degree murder, on the one
> hand, and a plea of guilty to second-degree murder, on the other,
> Alford quite reasonably chose the latter and thereby limited the
> maximum penalty to a 30-year term.  When his plea is viewed in
> light of the evidence against him, which substantially negated his
> claim of innocence and which further provided a means by which
> the judge could test whether the plea was being intelligently
> entered . . . , its validity cannot be seriously questioned.  In view of
> the strong factual basis for the plea demonstrated by the State and
> Alford's clearly expressed desire to enter it despite his professed
> belief in his innocence, we hold that the trial judge did not commit
> constitutional error in accepting it . . . .  Alford now argues in
> effect that the State should not have allowed him this choice but
> should have insisted on proving him guilty of murder in the first
> degree.  The States in their wisdom may take this course by statute
> or otherwise and may prohibit the practice of accepting pleas to
> lesser included offenses under any circumstances.  But this is not
> the mandate of the Fourteenth Amendment and the Bill of Rights.

Alford, 400 U.S. at 37-39 (citations and footnotes omitted).

In this case, Ground One does not warrant habeas relief because the subsequent

indictment of Officer Furlow does not implicate the voluntariness of the choice Petitioner made

to enter a plea of guilty, rather than risk being convicted at a trial.  Even without Furlow's

indictment, Petitioner knew at the time he pled guilty that Furlow had planted the evidence on

Petitioner.  Petitioner chose to plead guilty rather than to risk challenging Furlow's credibility at

trial.  The fact that Petitioner would make a different choice subsequent to Furlow's indictment

13

does not make his first choice involuntary.  Under these circumstances, this Court rejects Petitioner's contention that the interests of justice would be better served by addressing the merits of his claims.  See Day, 547 U.S. at 210.

Because the Petition was filed 161 days after the statute of limitations expired and Petitioner has not shown that equitable tolling is warranted, this Court will dismiss the Petition with prejudice as time barred.

C.  Certificate of Appealability

The AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  In Slack v. McDaniel, 529 U.S. 473, 484 (2000), the United States Supreme Court held:  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.  This Court denies a certificate of appealability because jurists of reason would not find it debatable that dismissal of the Petition as untimely is correct.

### III.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice as untimely and denies a certificate of appealability.

_____
**PETER G. SHERIDAN, U.S.D.J.**

DATED: ___12/15/09_____, 2009